MAINE SUPREME JUDICIAL COURT                         Reporter of Decisions
Decision:    2026 ME 86
Docket:      Pen-25-318
Argued:      December 9, 2025
Decided:     August 13, 2026

Panel:       STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ.

## STATE OF MAINE

v.

## JEFF BELONY

MEAD, J.

[¶1] Following a motor vehicle stop on March 15, 2021, during which law enforcement officers recovered illegal drugs on Jeff Belony's person, the State charged Belony with aggravated trafficking in scheduled drugs (Class A), 17-A M.R.S. § 1105-A(1)(D) (2021),[1] and criminal forfeiture, 15 M.R.S. § 5826 (2021).[2] Belony moved to suppress the evidence obtained during the traffic stop and search; the trial court (Penobscot County, *Mallonee, J.*) denied the

---

[1] Title 17-A M.R.S. § 1105-A(1)(D) has since been amended but not in any way that affects this appeal. *See* P.L. 2021, ch. 396, § 4 (effective Oct. 18, 2021) (codified at 17-A M.R.S. § 1105-A(1)(D) (2026)).

[2] Title 15 M.R.S. § 5826 has since been amended but not in any way that affects this appeal. *See* P.L. 2021, ch. 454, § 13 (effective Oct. 18, 2021) (codified at 15 M.R.S. § 5826 (2026)); P.L. 2023, ch. 196, § 1 (effective Oct. 25, 2023) (codified at 15 M.R.S. § 5826 (2026)).

motion. Belony entered a conditional guilty plea and now appeals from the judgment of conviction, challenging the court's denial of his motion to suppress.

[¶2] Belony puts forward three arguments in support of his assertion that the court erred in refusing to suppress the evidence: (1) law enforcement lacked a reasonable, articulable suspicion to stop the vehicle; (2) law enforcement prolonged the traffic stop beyond what was reasonable; and (3) law enforcement lacked probable cause to search Belony's person. Because we conclude that the trial court did not make sufficient findings to support the reasonableness of the investigatory stop's duration, we vacate the judgment of conviction and vacate the order denying Belony's motion to suppress evidence.

## I. BACKGROUND

[¶3] Viewing the evidence in the light most favorable to the court's order denying Belony's motion to suppress, the record, including a video recording, supports the following facts. *See State v. Sasso*, 2016 ME 95, ¶ 2, 143 A.3d 124; *see also State v. Athayde*, 2022 ME 41, ¶ 29, 277 A.3d 387 (indicating that, when reviewing a trial court's findings, we can review video recordings admitted at the suppression hearing); *State v. King*, 2016 ME 54, ¶ 3, 136 A.3d 366 (relying on a video recording played at a suppression hearing when setting forth the facts of the case).

[¶4]  At some point before March 15, 2021, two cooperating informants provided information to law enforcement pertaining to alleged drug trafficking. One informant told law enforcement that two Black men, "Heff" and "Mel," were involved in drug trafficking with a third person.  Law enforcement had information to support a belief that "Heff" might be Jeff Belony.  Surveillance of the scene of a supposedly planned drug transaction yielded nothing, however.

[¶5]  Another informant told law enforcement in Milo that Heff was traveling from New York to Maine on a certain bus line and would arrive in Bangor on March 15, 2021.  Agents from the primary investigating agency—the Maine Drug Enforcement Agency (MDEA)—surveilled the bus terminal on March 15.  Informants had told the agents that Heff drove a Chevrolet Monte Carlo; while no Monte Carlo arrived at the Bangor bus terminal, a Ford Focus registered to a Milo resident did arrive there.  Law enforcement had no information connecting the Focus with the alleged drug trade.  Law enforcement officers observed a Black man leaving the bus and entering the Focus.

[¶6]  The MDEA agents decided that they wanted to stop the Focus.  They believed, however, that the information that they had about Heff's involvement in the drug trade did not provide a reasonable, articulable suspicion to stop the

4

vehicle. Law enforcement eventually seized upon two plausible rationales to stop the car: the car's rear license plate was so obscured by dirt that it could not reasonably be read, and an MDEA agent believed that he observed the passenger (later confirmed to be Belony) to not be wearing a seat belt, although his belief was ultimately determined to be incorrect.

[¶7] At the request of the MDEA, an officer with the Bangor Police Department followed the car a substantial distance before stopping the vehicle. The Bangor officer had a drug-detecting dog with him, but he was not employed by or working with the MDEA and did not know about the allegations connected to Belony when he initiated the stop. After speaking with the driver of the car, the officer returned to his cruiser and called the primary MDEA agent.

[¶8] At some point after the officer's conversation with the MDEA agent, the officer walked to the passenger side of the car and identified Belony, a backup officer led the drug-detecting dog around the car, and the primary officer provided Belony's name to the MDEA agent. When the dog reached the driver's side—not the passenger's side where Belony sat—it indicated that it detected drugs. The primary officer removed both occupants from the car and searched Belony, finding drugs on Belony's person.

[¶9]  On May 26, 2021, the Penobscot County Grand Jury returned an indictment charging Belony with aggravated trafficking in scheduled drugs (Class A), 17-A M.R.S. § 1105-A(1)(D), and criminal forfeiture, 15 M.R.S. § 5826. On October 1, 2021, Belony filed a motion to suppress the evidence obtained from the stop of the vehicle and search of his person.  *See* M.R.U. Crim. P. 41A.

[¶10]  The trial court (*Anderson, J.*) held a hearing on Belony's motion to suppress on February 16, 2022.  On May 16, 2023, the court (*Mallonee, J.*)[3] denied Belony's motion to suppress.  Belony did not file a motion for findings of fact or conclusions of law under M.R.U. Crim. P. 41A(d).

[¶11]  On May 10, 2024, Belony pleaded guilty to both counts, conditioned on the right to appeal the court's denial of his motion to suppress. *See* M.R.U. Crim. P. 11(a)(2).  On June 26, 2025, Belony filed a notice of appeal, which we deemed timely.[4]

---

[3] Justice Anderson retired before an order was issued, and the matter was reassigned to Justice Mallonee.  *See* M.R.U. Crim. P. 25(a).  No additional evidentiary hearings took place, and Justice Mallonee decided the motion on the existing record.  The parties agreed to the procedure used and did not raise any issue about it on appeal, so we deem any arguments regarding irregularities in the procedure waived. *See State v. Beaulieu*, 2025 ME 4, ¶ 19 n.9, 331 A.3d 280.

[4] Belony's original notice of appeal was filed after the deadline had passed.  *See State v. Belony*, 2025 ME 26, ¶ 9, 334 A.3d 633.  Following the dismissal of his appeal, Belony petitioned for post-conviction relief; the court concluded that Belony's trial counsel was ineffective and reinstated Belony's right to appeal.  *See* 15 M.R.S. § 2130 (2026).

## II.  DISCUSSION

[¶12]  Belony advances three reasons why the court erred in denying his motion to suppress the evidence collected during the investigatory stop: first, law enforcement lacked a reasonable, articulable suspicion of wrongdoing to support the stop of the vehicle; second, law enforcement improperly prolonged the stop; and third, law enforcement lacked probable cause to search Belony.

### A.    Reasonable, Articulable Suspicion

[¶13]  The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures by police officers and other government agents.[5]  U.S. Const. amend. IV; *State v. Blier*, 2017 ME 103, ¶ 8, 162 A.3d 829.  To support a brief investigatory stop of a motor vehicle, "a police officer must have an objectively reasonable, articulable suspicion that either criminal conduct, a civil violation, or a threat to public safety has occurred, is occurring, or is about to occur."  *State v. Lovell*, 2022 ME 49, ¶ 8, 281 A.3d 651 (quotation marks omitted).  "[R]easonable articulable suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence.  The

---

[5]  Belony did not develop an argument under the Maine Constitution before the trial court.  Nor has he raised any argument regarding whether article 1, section 5 of the Maine Constitution includes an exclusionary rule, a prerequisite to the requested relief in this case.  For these two independent reasons, any argument based on the Maine Constitution has been waived, and we focus only on the requirements of the Fourth Amendment.  *See State v. Carter*, 2025 ME 77, ¶ 22, n.6, 345 A.3d 38; *State v. Norris*, 2023 ME 60, ¶ 36, 302 A.3d 1.

suspicion need only be more than speculation or an unsubstantiated hunch." *State v. Porter*, 2008 ME 175, ¶ 9, 960 A.2d 321 (citation and quotation marks omitted).

[¶14]   Belony contends that the officer did not have a reasonable, articulable suspicion of a license plate violation because 29-A M.R.S. § 452 (2026) does not provide a distance from which a license plate must be visible, and the officer testified that he could read the plate once he was "right on the bumper."  Belony concurs with the trial court's conclusion that, because the MDEA agent was apparently mistaken in his belief that Belony was not wearing a seat belt, the suspected seat belt violation did not provide sufficient grounds to conduct an investigatory stop.  Belony further contends that the officer's identification of him did not provide law enforcement with a reasonable, articulable suspicion of drug trafficking sufficient to extend the length of the stop beyond the time needed to investigate the suspected license plate and seat belt violations.

[¶15]   When considering whether law enforcement had a reasonable, articulable suspicion of wrongdoing sufficient to justify an investigatory stop, "[w]e first determine whether the record supports the factual findings made by the motion court.  We then review de novo the motion court's conclusion that

the officer's subjective suspicion was objectively reasonable as a matter of law." *Sasso*, 2016 ME 95, ¶ 17, 143 A.3d 124 (citations and quotation marks omitted); *see State v. McLain*, 2025 ME 87, ¶ 16, 345 A.3d 141 (stating that the suspicion of criminal activity must be "more than mere speculation or an unsubstantiated hunch").

### 1.  Suspected License Plate and Seat Belt Violations

[¶16]  Title 29-A M.R.S. § 452 governs the manner of displaying a license plate.  Subsection 1 requires that, with limited exceptions not applicable here, license plates "be attached to the front and the rear of each vehicle." Subsection 3 mandates that license plates "always be properly displayed."  And subsection 4 requires that the "numbers, letters and words" on a license plate "always be plainly visible and legible."  Section 1909 provides that "[a] vehicle must have a white light capable of illuminating the rear registration plate so that the characters on the plate are visible for a distance of at least 50 feet." 29-A M.R.S. § 1909 (2021).[6]  Reading 29-A M.R.S. § 452 in context, it is objectively reasonable for an officer to believe that a license plate which is so obscured that it can be read from only a few feet away is not "plainly visible and legible" as required by section 452.  *See State v. Lovejoy*, 2024 ME 42, ¶ 17, 315

---

[6]  Title 29-A M.R.S. § 1909 has since been amended but not in any way that affects this appeal.  *See* P.L. 2021, ch. 216, § 45 (effective Oct. 18, 2021) (codified at 29-A M.R.S. § 1909 (2026)).

A.3d 744 (holding that it was objectively reasonable for officer to believe that an inoperable rear license plate light of victim's car, even with a second working light, constituted a traffic violation).[7]

[¶17] Likewise, the MDEA agent's belief that Belony was not wearing a seat belt, presumably in violation of 29-A M.R.S. § 2081(3-A) (2026), amounted to a reasonable, articulable suspicion of a traffic infraction. That the MDEA agent's suspicion here was based on what was later determined to be a factual mistake did not negate law enforcement's prerogative to investigate it. *See Heien v. North Carolina*, 574 U.S. 54, 57 (2014) ("[A] search or seizure may be permissible even though the justification for the action includes a reasonable factual mistake."); *State v. Hill*, 606 A.2d 793, 794-95 (Me. 1992) (apparent absence of rear license plate justified an investigatory stop of pickup truck even though after initiating the stop, the officer realized that the truck had a license plate in its rear window).

[¶18] As the court noted, the suspected license plate and seat belt violations were pretexts for the traffic stop. Law enforcement sought to pull

---

[7] Belony additionally contends that, if the purpose of 29-A M.R.S. § 452 is for law enforcement to be able to run license plates, then the fact that an agent had already run the plate number negated the officer's need to read the plate. This argument is unpersuasive. The officer had an objectively reasonable belief that an obscured license plate amounted to a violation, which permitted the officer to initiate a stop even if he already knew the license plate number.

over the car to investigate suspected drug trafficking; the primary objective was not to enforce motor vehicle and traffic laws. Nevertheless, this does not change our analysis that law enforcement had objectively reasonable bases to initiate the stop. *See Sasso*, 2016 ME 95, ¶¶ 9-15, 143 A.3d 124; *Whren v. United States*, 517 U.S. 806, 812-13 (1996).

### 2. Suspected Drug Trafficking

[¶19] The court concluded that Belony's identification by law enforcement, coupled with the quantum of information from informants, provided law enforcement with a valid basis for prolonging the stop after Belony's identification. Implicit in this analysis is the assumption that law enforcement had a reasonable, articulable suspicion of wrongdoing separate from the license plate and seat belt violations, since Belony's suspected connection to drug trafficking was unrelated to the original justifications for the traffic stop. *See State v. Fitzgerald*, 2025 ME 65, ¶ 15, 340 A.3d 121. We therefore must address the question of whether law enforcement had an objectively reasonable suspicion of drug trafficking once an officer identified Belony.

[¶20] The court's findings regarding the information provided by the confidential informants are sparse. The court described the information as

"thin but not nonexistent." It found that the MDEA was looking for a Black man called "Heff," that law enforcement's search of a database yielded Belony as one of several persons known as "Heff," that law enforcement had received information that Heff would be arriving in Maine from New York on a certain bus line on March 15, 2021, and that the vehicle in which Belony departed from the bus stop was registered in the town where a suspected drug sale was to take place.

[¶21] Although this information alone was not sufficient to initiate the stop, once the officer identified Belony as the passenger in the Focus, law enforcement collectively had sufficient information to connect Belony to the reports of drug transactions, which provided an objectively reasonable suspicion of wrongdoing sufficient to justify further investigation of suspected drug trafficking, including by use of the drug-detecting dog. *See State v. Carr*, 1997 ME 221, ¶ 7, 704 A.2d 353 ("Reasonable and articulable suspicion to conduct an investigatory stop can rest on the collective knowledge of the police.").

## B. Reasonableness of the Investigatory Stop's Duration

[¶22] We next consider, based on the trial court's findings of fact, whether law enforcement improperly prolonged the seizure beyond the actual

time needed to investigate the suspected traffic violations. As just discussed, once Belony was identified, the officers had a basis to continue their investigation. Here, we focus on the reasonableness of the officer's actions up until the point of identification. We review the trial court's findings of fact for clear error and its conclusions of law de novo. *See Lovejoy*, 2024 ME 42, ¶ 16, 315 A.3d 744.

[¶23]  "[A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez v. United States*, 575 U.S. 348, 350 (2015); *Fitzgerald*, 2025 ME 65, ¶ 14, 340 A.3d 121. In *Rodriguez*, the Supreme Court determined that, absent reasonable suspicion of a drug crime, a dog sniff conducted after the completion of a traffic stop, where the officer had already given the citation and documents to the driver and the original mission of the stop was complete, was not permitted under the Fourth Amendment. 575 U.S. at 350-58. The Court explained that "[a] seizure justified only by a police-observed traffic violation . . . becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Id.* at 350-51 (alterations and quotation marks omitted).

[¶24] Here, the trial court concluded that law enforcement did not improperly prolong the seizure because the officer identified Belony within the usual timeframe for a traffic stop for a similar violation. Yet, as the Supreme Court explained in *Rodriguez*, the reasonableness of a seizure's timeframe hinges on "what the police in fact do" during the seizure rather than merely whether the seizure's duration was typical. *Id.* at 357. An analysis that focuses purely on a seizure's timeframe, irrespective of how officers utilized this time, would grant officers who expeditiously complete all traffic-related tasks "bonus time to pursue an unrelated criminal investigation." *Id.* The trial court's analysis here is thus inconsistent with the standard in *Rodriguez*.

[¶25] Moreover, the court's key findings pertaining to the timeframe and timeline of the stop are clearly erroneous. In determining that the duration of the traffic stop prior to Belony's identification was reasonable, the court found that law enforcement identified Belony "within 5 or 6 minutes of the stop." Yet the evidence indicates that law enforcement did not identify Belony until at least eight minutes and forty-eight seconds[8] after the two vehicles came to a

---

[8] We offer no opinion as to whether this approximate duration was a reasonable amount of time for law enforcement to complete the initial mission of the stop; this issue is committed to the determination of the trial court in the first instance. The record before the trial court and this court provides little information on what the officers were actually doing during the traffic stop as the clock was ticking.

14

halt. More consequential, however, is that the court confused the timeline of events. The court found that "[a]fter the dog indicated on the car, both occupants were removed, Mr. Belony was identified, then he was searched." But the evidence, including the video of the traffic stop, does not support that the officer identified Belony *after* the dog indicated on the car and Belony had been removed from the car.

[¶26] Although there is evidence in the record that could support the reasonableness of the stop's duration, the court did not make findings pertaining to how law enforcement spent the time leading up to Belony's identification, nor did it address whether, before the officer identified Belony, law enforcement's efforts to investigate suspected drug trafficking extended the traffic stop's duration beyond the time necessary to investigate the suspected license plate and seat belt violations.

[¶27] In denying a motion to suppress evidence, "the court shall make findings of fact and conclusions of law," and "[i]f the court fails to make such findings and conclusions, a party may file a motion seeking compliance with the requirement." M.R.U. Crim. P. 41A(d). "[A]s the party responsible for an adequate record, the appellant has the burden to request the court to make findings if none are made or to expand on inadequate findings in order for the

record to be meaningful for appellate review." *State v. Kneeland*, 552 A.2d 4, 6 (Me. 1988); *see Sasso*, 2016 ME 95, ¶¶ 18-19, 143 A.3d 124; *State v. Izzo*, 623 A.2d 1277, 1280-81 (Me. 1993). When neither party has filed a motion for findings of fact and conclusions of law under M.R.U. Crim. P. 41A(d), as is the case here, we may infer that the court "found all the facts necessary to support its judgment if those inferred findings are supportable by evidence in the record." *State v. Connor*, 2009 ME 91, ¶ 9, 977 A.2d 1003.

[¶28] Here, the court did not make adequate findings to support its determination. Complicating our analysis, however, is that some of the key findings of fact that the court did make were clearly erroneous, and the court reached its conclusions of law through flawed or incomplete legal analysis that was premised upon its erroneous factual findings. Although we may affirm an order on grounds different from the trial court's reasoning, *see Fitzgerald*, 2025 ME 65, ¶ 2, 340 A.3d 121, doing so here would require us to infer that the court found that, prior to identifying Belony, law enforcement's actions to investigate potential drug trafficking did not prolong the stop. Yet the court expressly found that *before* the officer identified Belony, the dog indicated on the car and the officer removed Belony from the car. This finding, which is clearly erroneous, may be contrary to an inference that law enforcement did not

prolong the stop by investigating matters outside of the initial mission. Critically, the video recording of the traffic stop does not definitively answer the question of what the officer was doing during the initial portion of the stop. *Cf. Scott v. Harris*, 550 U.S. 372, 378-80 (2007) (drawing facts from video evidence where a party's assertions, adopted by the lower court, contradicted the video evidence). We therefore cannot here infer that the court made the necessary findings, based upon competent evidence in the record, to support its denial of Belony's motion to suppress evidence.

[¶29] For these reasons, we vacate the judgment of conviction and the court's order denying Belony's motion to suppress evidence.[9]

The entry is:

> Judgment of conviction and order denying motion to suppress evidence vacated. Remanded to the trial court for further proceedings in accordance with this opinion.[10]

---

[9] Although we do not reach the issue of whether law enforcement had probable cause to search Belony, we note that a dog alert on a vehicle may support a search of the vehicle and the vehicle's occupants, particularly when additional evidence supports that a search may uncover drugs. *See State v. Martin*, 2015 ME 91, ¶ 14, 120 A.3d 113 (holding that probable cause to believe that drugs would be found on the driver or in the driver's vehicle extended to the passenger); *Maryland v. Pringle*, 540 U.S. 366, 372-73 (2003) (holding that, because the officer located drugs in the back seat of the vehicle, he had probable cause to arrest the front seat passenger).

[10] Further proceedings may include reopening the evidentiary hearing on Belony's motion to suppress.

Hunter J. Tzovarras, Esq. (orally), Bangor, for appellant Jeff Belony

Aaron M. Frey, Attorney General, and Jason Horn, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Penobscot County Unified Criminal Docket docket number CR-2021-692
For Clerk Reference Only